UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIM ELLISON,<br><br>                              Plaintiff,<br><br>                              v.<br><br>JANET NAPOLITANO, Secretary,<br>Department of Homeland Security,<br><br>                              Defendant. | Civil Action No. 11-01386 (BAH)<br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, Kim Ellison, has sued the defendant, Janet Napolitano, in her official capacity as Secretary of the U.S. Department of Homeland Security, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and section 501 of the Rehabilitation Act of 1973, as amended, 20 U.S.C. § 791 *et seq.* for discrimination based on her sex and disability and for reprisal for her prior protected activity. *See* Complaint ("Compl."), ECF No. 1, ¶ 4.  Pending before the Court is the defendant's motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), part of the plaintiff's claims on grounds that the plaintiff failed to exhaust her administrative remedies.  For the reasons set forth below, this motion is granted in part and denied in part.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff worked as an Information Technology Specialist at the United States Coast Guard (USCG) at its headquarters in Washington, D.C., from about May 2006 to November 21, 2010, when she was terminated.  Compl. ¶¶ 7, 37.

1

Less than four months after her employment began, the plaintiff "entered into a telework agreement," permitting her to work from home "as needed." *Id*. ¶ 8.[1]  While this arrangement continued "without any modification[ ]" for nearly three years under two different first line supervisors, the plaintiff's second first line supervisor rescinded the plaintiff's telework agreement on May 20, 2009 on the basis "that Plaintiff's performance was unsatisfactory." *Id*. ¶¶ 8-10, 16.[2]

In the preceding three weeks, from May 5 to May 19, 2009, the plaintiff claims that she suffered severe back pain and, consequently, took leave on May 5, visited medical personnel on May 8 ("her regular day off") and 11, and worked from home on May 7 and 11, per the telework agreement.[3]  *Id*. ¶¶ 11-14.  The plaintiff states that "[d]uring this period, [her] medical condition worsened dramatically and she lost function in her leg." *Id*. ¶ 14.  "Despite [her] serious medical condition, [her first line supervisor] ordered her to return to work on May 20, 2009 or be subject to AWOL and other disciplinary actions." *Id*. ¶ 15.

Despite rescission of the telework agreement and being cautioned by her supervisor that she had to return to work on May 20, 2009, *see id*., the plaintiff apparently

---

[1] The plaintiff notes that "[a]ll of the other IT Specialists in Plaintiff's work group had similar telework agreements in place."  Compl. ¶ 10.

[2] The plaintiff disputes the reason for the rescission "because Plaintiff had received a satisfactory performance evaluation for the period ending March 31, 2009 and no one told Plaintiff that her performance had slipped between April 1, 2009 and May 20, 2009." Compl. ¶ 16.  "The only change that occurred between the date of the satisfactory evaluation and rescission of telework," the plaintiff claims, "was that Plaintiff's health deteriorated and she voiced her need for an accommodation of her disabilities." Compl. ¶ 16.

[3] The plaintiff notes that her first-line supervisor never responded to her email requesting to telework for May 7, 2009 and May 11, 2009, but "[b]ecause Plaintiff had a telework agreement in place and had provided [her first line supervisor] the information required under the agreement, Plaintiff believed that by his silence [her first line supervisor] had granted permission for her to telework." Compl. ¶ 13.  The Complaint does not make clear whether the plaintiff worked in the office on the other work days in May of 2009.

continued to telework through June 20, 2009, *see id*. ¶ 22 (indicating that her first line supervisor placed her on AWOL for 80 hours during the pay period of June 7 to June 20, 2009). The plaintiff's requests for telework as a reasonable accommodation for her back pain were explicitly denied on May 20, 2009 by her first line supervisor, *see id*. ¶ 17, and not expressly responded to by a more senior supervisor, *see id*. ¶ 19.[4]

The plaintiff's first line supervisor reiterated denial of permission for the plaintiff to telework on June 9, 2009, on which date the supervisor also issued a Letter of Requirement, stating that "[the p]laintiff had failed to adhere to agency policies regarding use of annual leave and sick leave." *Id*. ¶¶ 20-21. The first line supervisor also "placed Plaintiff on AWOL for 17 hours during pay period 11 (May 22, 2009 to June 6, 2009) and for 80 hours during pay period 12 (June 7, 2009 to June 20, 2009)," *id*. ¶ 22, and "announced that he would no longer advance Plaintiff leave when she needed it for medical issues after she had exhausted her sick and annual leave" because he did not have the "reasonable expectation that the [plaintiff] would return to work," *id*. ¶ 23. The plaintiff also requested that she be allowed to work at an alternate work site closer to home, but the first line supervisor denied that request. *See id*. ¶ 24.

The plaintiff was out of work for approximately four months and returned to work on about September 1, 2009. *See id*. ¶¶ 27-28. The plaintiff claims that, as a result of her first line supervisor not accommodating the plaintiff's requests for reasonable accommodation, she was not paid for those four months, and "almost lost her home" as a result of being out of work. *Id*. The plaintiff also claims that her agency "failed to engage in interactive dialogue" with the plaintiff and that she was treated differently than

---

[4] The plaintiff concluded, however, that the more senior supervisor "had approved her request to telework" because he gave her an assignment and "knew that Plaintiff's medical condition prevented her from performing the assignment in the office." Compl. ¶ 19.

a "male IT Specialist with a medical condition similar to Plaintiff's," who, "[p]rior to October or November 2010 . . . was allowed to telework whenever he wanted as long as he called in." *Id*. ¶¶ 25-26.

On March 31, 2010, the plaintiff received an "unsatisfactory performance evaluation," *id*. ¶ 29, which the plaintiff claims resulted from her inability to work for four months and was "directly caused by the unlawful acts of the Defendant" that "prevented her from completing assignments that she would have been able to complete had she been accommodated," *id*. ¶ 30. The plaintiff also claims that "any performance deficiencies were attributable" to the agency's failure to provide ergonomic equipment she requested. *Id*.

On May 12, 2010, the plaintiff contacted a counselor at the Equal Employment Opportunity Office (EEO). *See id*. ¶ 31. On June 22, 2010, the defendant issued a notice of unacceptable performance and opportunity to improve (PIP) to the plaintiff. *See id*. ¶ 33. The plaintiff notes that, during her 60-day improvement period, "[s]ome of the ergonomic equipment [she requested as a reasonable accommodation, such as "Dragon Naturally Speaking" software and a special desk,] were still not fully in place." *Id*. ¶ 34. Furthermore, "[a]lthough [the plaintiff's first line supervisor] was supposed to meet with Plaintiff during the PIP on a biweekly basis, he met with Plaintiff only three . . . times" and "did not tell Plaintiff about areas that still needed improvement until their last meeting on August 20, 2009." *Id*. ¶ 35.

The plaintiff requested of the Acting Division Director, on or about September 10, 2010, that she be allowed to telework on September 16 and 17, 2010 "so she could go to her doctor, get new pain medications, get acclimated to the pain medications and get her

work done." *Id*. ¶ 36. The Acting Division Director agreed to the request but the next day rescinded his approval based on the first line supervisor's instructions. *See id*.

On or about September 28, 2010, the defendant issued a Notice of Proposed Removal, which resulted in the plaintiff being removed from her position on November 21, 2010. *See id*. ¶ 37.

The plaintiff then filed a Complaint in this Court, claiming sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. (Count 1); denial of reasonable accommodation and discharge because of disabilities, in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 *et seq*. (Counts 3 and 4), and retaliation for engaging in protected activities (Counts 2 and 5). The plaintiff claims that she "has sustained damages as a result of defendant's unlawful conduct consisting of lost wages and benefits, front pay, front benefits, emotional distress, pain and suffering and mental anguish." Compl. ¶ 38.[5]

The defendant has filed a motion, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss part of the plaintiff's Complaint due to the plaintiff's failure to exhaust her administrative remedies. That motion is now pending before the Court.

---

[5] This Court initially dismissed this action without prejudice because the Court did not have proof that the defendant had been served within 120 days after the Complaint was filed and the plaintiff had not demonstrated good cause why this action should not be dismissed for failure to serve the defendant, pursuant to Federal Rule of Civil Procedure 4(m). *See* Minute Order (Jan. 11, 2011). The Court then granted the plaintiff's Motion for Relief from Judgment, ECF No. 4, finding, based upon submissions by the plaintiff, that she had made a good faith effort to effect timely service, and that a *nunc pro tunc* three-day extension of time for the plaintiff to serve the defendant would not prejudice the defendant. *See* Memorandum Opinion and Order, ECF No. 8, at 4.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Mahoney v. Donovan,* 824 F. Supp. 2d 49, 55 (D.D.C. 2011) (internal quotation marks and citation omitted) (noting same standards for 12(b)(1) as 12(b)(6)) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (noting that "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader"); *see also Walker v. Jones*, 733 F.2d 923, 925-26 (D.C. Cir. 1984) (same).

A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13-14 (alterations in original) (citations omitted).

In deciding a motion to dismiss based upon lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a Court "may consider materials outside [of] the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *see also Venetian Casino Resort, L.L.C. v. EEOC*, 409 F.3d 359,

366 (D.C. Cir. 2005) (noting, that under Rule 12(b)(1), "the court may consider materials outside the pleadings").

### B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* FED. R. CIV. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alterations in original) (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "'merely consistent with' a defendant's liability"; "the plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557); *accord Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). The Court "must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotation marks omitted).

### C. Exhaustion of Administrative Remedies

A plaintiff may file a Title VII or Rehabilitation Act action in federal court only after exhausting her administrative remedies before the relevant federal agency for each allegedly discriminatory act. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (Title VII); *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (Rehabilitation Act).

Under the Rehabilitation Act, a failure to exhaust administrative remedies is a jurisdictional defect, requiring dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1).  *See Spinelli*, 446 F.3d at 162.  Since exhaustion of Rehabilitation Act claims "is a jurisdictional requirement," the plaintiff has the burden to plead and prove it.  *Carty v. Dist. of Columbia*, 699 F. Supp. 2d 1, 2 n.2 (D.D.C. 2010) (citation omitted).

By contrast, "Title VII's exhaustion requirements are not jurisdictional." *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011) (citations omitted).  "Accordingly, a '12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is the appropriate vehicle to challenge an alleged failure to exhaust' administrative remedies under Title VII." *Mahoney*, 824 F.2d at 58 (citations omitted).  "Because untimely exhaustion of [Title VII] administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citation omitted).  "In other words, odd as it may seem, Defendants carry the burden of proof under Title VII while Plaintiff bears that burden under the Rehabilitation Act." *Mahoney*, 824 F.2d at 58.

The procedures governing administrative processing of discrimination complaints brought by employees of the federal government under the ADEA, Title VII and the Rehabilitation Act are set forth in 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).  *See* 29 C.F.R. § 1614.105.

An employee "must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." *Id*. § 1614.105(a).  "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." *Id*. § 1614.105(a)(1).

8

If the matter is not resolved through informal counseling, the aggrieved employee must, within 15 days, file a written complaint with the agency that allegedly discriminated against him or her. *See id*. § 1614.106(a)-(c). The agency must investigate the matter within 180 days or reject the complaint and issue a final dismissal unless the parties agree in writing to extend the investigation period. *See id*. §§ 1614.106(e)(2), 1614.107. At the conclusion of the agency's investigation, the complainant may request a hearing before an EEOC administrative judge or an immediate final decision by the agency. *See id*. § 1614.108(f).

A complainant who receives an adverse final decision from the agency may appeal that decision to the EEOC within 30 days, or may file a civil action within 90 days. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.402(a)-1614.407; *see also Wilson v. Pena*, 79 F.3d 154, 157 (D.C. Cir. 1996); *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 245-46 (3d Cir. 1999). A complainant also may file a civil action at any time after a complaint has been pending before the agency or the EEOC for at least 180 days. *See* 42 U.S.C. 2000e-16(c); 29 C.F.R. § 1614.408.

"Complainants must timely exhaust these administrative remedies before bringing their claims to court." *Bowden*, 106 F.3d at 437. As the U.S. Supreme Court stated in *National Railroad Passenger Corp. v. Morgan*, "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" 536 U.S. 101, 108 (2002) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

## III.  DISCUSSION

The defendant contends that, "[f]or almost half of the alleged incidents in the Complaint, the Plaintiff did not initiate contact with an EEO Counselor within 45 days of their alleged occurrences," and that to the extent these claims form for the basis for discrete acts of discrimination, they must therefore be dismissed for failure to exhaust in a timely manner.  Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), ECF No. 10, at 8-9.  The plaintiff counters that all of her claims are preserved by virtue of her hostile work environment claim, which "may be based on acts that occur outside of the statutory filing period so long as one act falls within the statutory period."  Pl.'s Opp'n to Def.'s Mem. ("Pl.'s Opp'n"), ECF No. 11, at 3.  The plaintiff's hostile work environment claim is too slim a reed to support the otherwise untimely claims, however.  Consequently, the defendant's motion to dismiss will be granted as to the plaintiff's hostile work environment claim and as to the plaintiff's claims related to alleged acts of discrimination prior to March 29, 2010, 45 days prior to her consultation with an EEO officer.  While the alleged acts of discrimination before March 29, 2010 were not exhausted, however, those alleged acts may be used as background evidence to support her timely claims.

Furthermore, the Court disagrees with the defendant as to the plaintiff's retaliation claims.  While the defendant claims that the plaintiff's May 12, 2010 contact with the EEO officer was the plaintiff's *only* protected activity, *see* Def.'s Mem. at 9 n.1, the Court agrees with the plaintiff that the plaintiff's earlier requests for accommodation for her disability, beginning in May 2009, were protected activity, and she may base her retaliation claims on retaliatory acts that she alleges resulted from her requests for

accommodation. The Court will first address the plaintiff's hostile work environment claim and then turn to the plaintiff's unexhausted allegations and, finally, to the plaintiff's retaliation claims.

### A.     Plaintiff's Hostile Work Environment Claim

None of the five listed counts in the Complaint asserts a claim for hostile work environment, but this claim appears buried in paragraph 4 of the Complaint, which "alleges that Defendant discriminated against [the plaintiff] and subjected her to a hostile work environment based on her sex (female), disability (physical) and reprisal for prior protected activity." Compl. ¶ 4. The defendant contends that this claim, which purportedly is based on all of the allegations set forth in the Complaint, fails "to establish that she suffered harassment based on sex, disability or reprisal that was sufficiently severe or pervasive to alter the conditions of her employment." Def.'s Reply to Pl.'s Opp'n, ECF No. 12, at 6. The Court agrees with the defendant.

A work environment is considered "hostile" in an employment discrimination case when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). For the Court to consider a hostile work environment claim, the plaintiff must establish a *prima facie* case by showing: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment that the plaintiff suffered was based on discrimination against the plaintiff's protected status (*i.e.* race or disability); (4) the harassment that the plaintiff

suffered affected a term, condition, or privilege of employment; and (5) her employer knew, or should have known, of the harassment and failed to take action to prevent further harassment. *See Jones v. GlaxoSmithKline, LLC*, 755 F. Supp. 2d 138, 149 (D.D.C. 2010) (citing *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003)). "The key terms, then, are 'severe,' 'pervasive,' and 'abusive,' as not just any offensive or discriminatory conduct rises to an actionable hostile work environment." *Id.* (quoting *Natsios*, 290 F. Supp. 2d at 22); *see also Peters v. District of Columbia*, No. 09-cv-02020, 2012 U.S. Dist. LEXIS 52606, *68 (D.D.C. Apr. 16, 2012); *Turner v. Shinseki*, 824 F. Supp. 2d 99, 123-24 (D.D.C. 2011); *Dorns v. Geithner*, 692 F. Supp. 2d 119, 135-36 (D.D.C. 2010) (citing *Hendricks v. Paulson*, 520 F. Supp. 2d 65, 89 (D.D.C. 2007)); *Roberson v Snow*, 404 F. Supp. 2d 79, 89-90 (D.D.C. 2005).

To determine whether a work environment is sufficiently "hostile," the Court must look at the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "[C]onduct must be *extreme* to amount to a change in the terms and conditions of employment . . . ." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (emphasis added). "[N]ot all abusive behavior, even when it is motivated by discriminatory animus, is actionable." *Stewart v. Evans*, 275 F.3d 1126, 1133 (D.C. Cir. 2002) (citations and quotation marks omitted). "[C]asual or isolated manifestations of a discriminatory environment . . . may not raise a cause of action." *Park v. Howard Univ.*, 71 F.3d 904, 906 (D.C. Cir. 1995) (quoting *Bundy v. Jackson*, 641 F.2d 934, 943 n.9 (D.C. Cir. 1981)). Moreover, not all forms of workplace harassment

are prohibited, only harassment based on a person's membership in a protected class. *See, e.g.*, *Stewart*, 275 F.3d at 1133.

In this case, the plaintiff does not allege that there were any derogatory comments about women or those who are disabled, or that there were any sexual or physical actions targeted against women or the disabled. Courts have routinely held hostile behavior, no matter how unjustified, cannot support a hostile work environment claim unless there is some linkage between the behavior and the plaintiff's membership in a protected class. *See Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009); *Kline v. Springer*, 602 F. Supp. 2d 234, 243 (D.D.C. 2009), *aff'd*, *Kline v. Berry*, 404 F. App'x 505 (D.C. Cir. 2010). The alleged comments and actions in the Complaint relate to work related issues, rather than gender or disability.

Thus, the totality of the circumstances presented by the plaintiff does not rise to the level of severity necessary to support a hostile work environment claim based on sex, disability or reprisal. *See Brooks v. Clinton*, 841 F. Supp. 2d 287, 303 (D.D.C. 2012) (finding no hostile work environment where "'[n]othing in the record suggests, [] that plaintiff endured intimidation, ridicule, insult, or other behavior that was offensive, pervasive, severe, or abusive'") (quoting *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 101 (D.D.C. 2011)). Accordingly, the Court will dismiss the plaintiff's hostile work environment claim.

### B.     Plaintiff's Unexhausted Allegations

The plaintiff first made contact with an EEO counselor on or about May 12, 2010. *See* Compl. ¶ 31. The defendant argues that "all claims prior to March 29, 2010 (45 days from the plaintiff's initial contact with an EEO counselor)" were not timely exhausted

13

and must be dismissed. Def.'s Mem. at 8-9. The allegations describing incidents occurring before March 29, 2010 are covered in paragraphs 11 through 28 of the Complaint, *see* Def.'s Mem. at 8-9, including:

1) First line supervisor ordering the plaintiff back to work on May 20, 2009. *See* Compl. ¶ 15;

2) First line supervisor rescinding the plaintiff's telework agreement on May 20, 2009. Compl. ¶ 16;

3) First line supervisor's decision not to reconsider his denial of the plaintiff's May 20, 2009 request for telework as an accommodation for her alleged disability. Compl. ¶ 17;

4) First line supervisor's denial on June 9, 2009 of the plaintiff's request to telework. Compl. ¶ 20;[6]

5) June 9, 2009 Letter of Requirement stating that the plaintiff had failed to adhere to annual and sick leave policy. Compl. ¶ 21;

6) The plaintiff's placement on AWOL during pay periods, May 22, 2009 – June 6, 2009 and June 7, 2009 – June 20, 2009. Compl. ¶ 22;

7) First line supervisor's denial of the plaintiff's request for more advanced leave. Compl. ¶ 23;

8) Defendant's alleged "failure to fully accommodate" the plaintiff prior to March 29, 201[0] and the alleged performance deficiencies that plaintiff attributes to the agency's "failure to fully accommodate" her prior to March 29, 201[0]. Compl. ¶ 30;

9) Supervisor's denial of the plaintiff's request to telework or work from an alternate work site closer to the plaintiff's home. Compl. ¶ 24;

Since these incidents were prior to March 29, 2010, 45 days from initial contact with an EEO counselor, they were not timely exhausted.

The plaintiff argues, however, that even if the Court finds that the allegations of acts occurring prior to March 29, 2010 are time-barred for failure to exhaust, she may

---

[6] The defendant refers to this claim as "Jager's denial" of plaintiff's request to telework, Def.'s Mem. at 8, but cites to paragraph 20 of the Complaint, which states that "[o]n June 9, 2009, Mr. Chappell [the plaintiff's first line supervisor] told Plaintiff that she did not have permission to telework." Compl. ¶ 20.

14

still use these acts as background evidence to support her claims. *Uzlyan v. Solis*, 706 F. Supp. 2d 44, 54 (D.D.C. 2010); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim" so long as the new claim is based on "independently discriminatory [acts] and charges addressing those acts are themselves timely filed"); *Mamantov v. Jackson*, No. 12-cv-407, 2012 U.S. Dist. LEXIS 147780, at *11 (D.D.C. Oct. 15, 2012) (noting that "plaintiffs can, in some circumstances, 'use prior acts as background evidence in support of a timely claim'") (quoting *Morgan*, 536 U.S. at 113). She is correct. Although claims based on these acts are time-barred, the plaintiff may still use evidence of these alleged acts as background evidence to support her timely exhausted claims.

### C. Plaintiff's Retaliation Claims

The defendant argues that certain allegations describing adverse personnel actions, which the plaintiff claims support her claims of retaliation, must fail because the actions occurred before she initiated the EEO process and therefore could not temporally have been prompted in reprisal. Specifically, the defendant states that the earliest protected activity described in the Complaint is the May 12, 2010[7] contact with the EEO counselor and no events occurring before then, including the plaintiff's unsatisfactory performance evaluation on March 31, 2010, could "have been a result of reprisal." Def.'s Mem. at 9 n.1.

The plaintiff disputes that her earliest protected activity is the May 12, 2010 contact with the EEO counselor. Instead, she contends that her requests to telework from home or from an alternate location closer to her home, starting on May 20, 2009,

---

[7] The defendant incorrectly cites this date as "May 12, 2012." Def.'s Mem. at 9 n.1.

15

constitute requests for reasonable accommodation of a disability and is protected activity under section 503 of the ADA. *See* Pl.'s Opp'n at 4. Thus, the plaintiff asserts that May 12, 2010 is not the "controlling date," but "[i]t was the earlier protected activity, the requesting of reasonable accommodations beginning on May 20, 2009, that triggered Defendant's reprisal." Pl.'s Opp'n at 4; *see* Compl. ¶¶ 21-23 (alleging that supervisor issued Letter of Requirement on June 9, 2009, placed her on AWOL, and denied her advancement of sick and annual leave "in retaliation for Plaintiff having engaged in protected activities.").

      The plaintiff is correct that requests for accommodation may constitute protected activity and therefore her allegations regarding those requests may support her claims of retaliation in Counts 2 and 5 of the Complaint. *See Mogenhan v. Napolitano*, No. 08-cv-5457, 2010 U.S. App. LEXIS 17330, at *10 (D.C. Cir. July 27, 2010) (noting that "'increas[ing an employee's] workload and tighten[ing] her deadlines in retaliation for her seeking a reasonable accommodation . . . might suffice to defeat summary judgment on a retaliation claim'") (quoting *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007)); *Schmidt v. Solis*, No. 07-cv-2216, 2012 U.S. Dist. LEXIS 133244, *52-53 (D.D.C. Sept. 18, 2012) (noting that "[i]t is clear that requesting a reasonable accommodation for a disability is a protected activity under the [Americans with Disabilities Act]"); *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (noting that "Coons was engaged in a protected activity when he requested that the IRS make reasonable accommodations for his alleged disability"); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003) (alteration in original) (noting that "it would seem anomalous . . . to think Congress intended no retaliation protection

for employees who request a reasonable accommodation unless they also file a formal charge") (quoting *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997)).

IV.     **CONCLUSION**

Accordingly, for the reasons explained above, the defendant's Motion to Dismiss is granted in part and denied in part. The defendant's motion is granted as to the plaintiff's hostile work environment claim and as to the plaintiff's claims related to alleged discrete acts of discrimination occurring prior to March 29, 2010, 45 days prior to her consultation with an EEO officer, and denied as to the plaintiff's retaliation claims.

The parties are directed to submit by November 22, 2012 a joint meet and confer statement in accordance with paragraph 5 of the Standing Order, ECF No. 2, with a proposed schedule for further proceedings in this case.

An appropriate Order accompanies this Memorandum Opinion.

**DATED:** November 4, 2012

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge